IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BRADLEY BAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-CV-00367-DGK |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Plaintiff Bradley Bauer asserts Defendant Midland Credit Management, Inc. violated § 1692c(c) of the FDCPA when it mailed him a letter on May 3, 2023, regarding his alleged debt. Defendant maintains the letter did not violate the FDCPA and that Plaintiff lacks standing to bring this claim regardless.

Now before the Court are the parties' cross motions for summary judgment. ECF Nos. 27 (Defendant's Motion for Summary Judgment), 28 (Plaintiff's Motion for Summary Judgment). For the reasons set forth below, Defendant's motion is GRANTED, and Plaintiff's motion is DENIED.[1]

---

[1] This case is nearly identical to *Smitherman v. Midland Credit Mgmt., Inc.*—a case previously before this Court wherein the Court granted summary judgment in Defendant's favor. No. 4:23-CV-00199-DGK, 2024 WL 3015790 (W.D. Mo. June 14, 2024). Both cases involve the same claim against Midland Credit Management, Inc., the same attorneys, and the same, word-for-word, summary judgment briefing. The only difference is the named plaintiff. Accordingly, the Court's summary judgment opinion here is essentially identical to that in *Smitherman*.

*Smitherman* is currently on appeal before the Eighth Circuit. *Smitherman v. Midland Credit Management, Inc.*, No. 24-2466 (8th Cir. July 16, 2024).

**Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

**Undisputed Material Facts**

The Court considers the undisputed material facts in the light most favorable to Plaintiff. On February 24, 2021, Defendant[2] purchased Plaintiff's Capital One Bank credit card account which had an outstanding debt. Defendant sent one collection letter to Plaintiff on March 1, 2021.[3]

---

[2] For purposes of summary judgment, the parties agree Defendant is a "debt collector" as defined by the FDCPA.

[3] Plaintiff also testified Defendant called him and sent him debt collection letters on multiple occasions. *See* Pl.'s Prop. Fact No. 5, ECF No. 29 at 2. Plaintiff's testimony is vague and does not specify when this conduct allegedly occurred. *See* Pl.'s Dep. at 25:18–25, 26:1–25, 27:1–21, ECF No. 29-1. Even if true, Plaintiff does not articulate how this fact is material to the present lawsuit. The only communication at issue here is Defendant's May 3, 2023, letter (the "Response Letter"). Accordingly, the Court declines to consider any other contacts Defendant allegedly had with Plaintiff in ruling on the motion for summary judgment. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

2

The disputed debt on the account is $1,232.53. Plaintiff does not know if he owes a debt or whether the debt amount is correct.

Over two years later, on April 24, 2023, Plaintiff's attorney typed a letter on Plaintiff's behalf stating, in part, "**I dispute that I owe you this debt. Do not contact me.**" *See* Compl., ECF No. 1-2 (the "Initial Letter"). Plaintiff's attorney printed the letter, Plaintiff signed it, and then Plaintiff's attorney mailed the letter to Defendant on Plaintiff's behalf. The letter did not indicate Plaintiff was represented by counsel, and the envelope contained only Plaintiff's return address.

On May 3, 2023, Defendant mailed Plaintiff a letter in response that stated, in part:

> We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account. After reviewing the information you provided, our account notes, and information provided by the previous creditor, . . . we have concluded that our information is accurate.
>
> * * *
>
> For additional information you may contact us online at MidlandCredit.com, you may also call Consumer Resolutions at 877-366-1520.
>
> In the meantime, as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume communications.

Compl., ECF No. 1-3 ("Response Letter"). The Response Letter also set forth a "current balance" on the first page, and stated, "This is an attempt to collect a debt" in a disclosure statement on the second page.[4] *Id.* Defendant did not send any more letters or otherwise communicate with Plaintiff after sending the Response Letter.

Plaintiff provided the Response Letter to his attorney but does not recall how he did so.

---

[4] This type of disclosure statement is often referred to as "mini-Miranda" warning in the industry. *See, e.g.*, *Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 760 (8th Cir. 2018).

On May 30, 2023, Plaintiff's counsel sent a single letter to Defendant stating Plaintiff was represented by counsel and ordering Defendant to cease contact (the "May Letter"). Compl., ECF No. 1-4. Plaintiff testified that he paid his attorney for the stamp to mail the May Letter, although he does not know how he paid him or when he paid him. The cost of the stamp is the only monetary damage alleged. Plaintiff's counsel has not charged or billed Plaintiff anything for this lawsuit to date.

Plaintiff also testified that Defendant's actions caused him to be "very upset" and he feels "hunted" by Defendant. He relies solely on his own testimony to prove emotional distress damages.

On June 1, 2023, Plaintiff filed this one-count lawsuit alleging Defendant violated § 1692c(c). Section 1692c(c) prohibits a debt collector from communicating with a consumer once "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer[.]"

## Discussion

Defendant now moves for summary judgment arguing (1) Plaintiff lacks standing to bring this claim, and even if Plaintiff had standing, (2) Defendant did not violate § 1692c(c) of the FDCPA. Meanwhile, Plaintiff moves for summary judgment arguing he has standing and Defendant violated § 1692c(c) by mailing the Response Letter.

### I. Plaintiff has failed to establish he has Article III standing.

Plaintiff bears the burden of proving Article III standing by showing he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1134 (8th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Plaintiff's injury may be tangible or intangible, but either way, it must be concrete. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Importantly, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341); see *Ebaugh v. Medicredit, Inc.*, No. 4:23-CV-209-MTS, 2023 WL 5289226, at *2 (E.D. Mo. Aug. 17, 2023).

Here, Plaintiff alleges the following injuries: (1) out-of-pocket expenses for the stamp; (2) the "time and effort" it took to involve his attorney in the matter; (3) emotional distress manifesting itself in ways such as "loss of sleep, being upset, and arguing with family members" and, (4) that Defendant's actions invaded his privacy and intruded upon his seclusion. Defendant argues Plaintiff's injuries are wholly contrived and he lacks standing. The Court agrees.

First, Plaintiff's testimony regarding the stamp is vague, and the Court doubts Plaintiff gave his attorney money for one postage stamp. Even assuming he paid for the stamp in some fashion, the May Letter was merely an attempt to manufacture standing. The Response Letter specifically indicated Defendant would no longer contact Plaintiff as requested, and Defendant did not contact him thereafter, making the May Letter entirely unnecessary. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (finding a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020). Thus, Plaintiff's out-of-pocket expense—viewed specifically in the context of the present facts—is inadequate to establish a concrete injury.

Second, Plaintiff's alleged "time and effort" is also insufficient to establish a concrete injury. Plaintiff testified that he only spent a few minutes reading the Response Letter when he received it, and he had already retained counsel to address his debt issues, as evidenced by his

5

attorney drafting the Initial Letter on his behalf. *Cf. Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (finding plaintiff lacked standing where he did not act to his detriment after receiving a copy of a garnishment summons and protected his interests by turning the documents over to his previously retained attorney). The facts of this case are very different from those cited and relied upon by Plaintiff. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692–93 (8th Cir. 2017) (finding plaintiff had standing where he obtained counsel, served discovery requests, and spent time defending against a meritless suit after a debt collector sent discovery demands and threatened to collect on an extinguished debt); *Mack v. Resurgent Cap.* Servs., L.P., 70 F.4th 395, 406 (7th Cir. 2023) (finding plaintiff had standing based on the time, effort, and money she spent going to the library and post office to draft and mail a second validation request after a debt collector failed to respond to her first request and then a different debt collector sent a letter informing her she could request validation); *Walters v. Fast AC, LLC*, 60 F.4th 642, 646–48 (11th Cir. 2023) (finding plaintiff had standing, in part, based on the time he spent making back-and-forth phone calls disputing a debt for weeks while the debt collector sent bills, past-due notices, and demand letters).

Third, Plaintiff's alleged emotional distress without more does not amount to a legally cognizable injury. *See Ojogwu*, 26 F.4th at 463; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (A plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" to overcome summary judgment. (quotation omitted)).

Fourth, Plaintiff fails to cite caselaw supporting the proposition that the Response Letter—which did not demand payment but instead clarified the amount owed and stated Defendant would no longer contact Plaintiff—violated his privacy and intruded upon his seclusion. The cases cited by Plaintiff are distinguishable because they involve situations where debt collectors were actively

attempting to collect a debt after receiving cease-and-desist letters. *See, e.g., Denmon v. Kansas Couns., Inc.*, 661 F. Supp. 3d 914, 917 (W.D. Mo. 2023) (debt collector's letter stated it would "resume collection activity on your account" after plaintiff requested communications cease); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1187, 1191–93 (10th Cir. 2021) (debt collector called plaintiff once and left a voicemail about a debt after plaintiff sent a cease-and-desist letter); *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460–63 (7th Cir. 2020) (discussing a different statute, the Telephone Consumer Protection Act, wherein plaintiff received multiple automated text messages despite being on the national "Do Not Call Registry").

Here, despite the mini-Miranda warning, Defendant's Response Letter was clearly intended to clarify the amount owed after Plaintiff disputed the debt amount. When viewed in this light, Plaintiff's alleged injury does not bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" as required to establish a concrete injury. *Ojogwu*, 26 F.4th at 462 (quotation omitted).

Since Plaintiff failed to establish a concrete injury, he lacks standing to bring his § 1692c(c) claim.

## II. Defendant's Response Letters did not violate the FDCPA.

Even if Plaintiff had standing to bring his claim, the Court would still find the Response Letter did not violate the FDCPA.[5]

Section 1692c(c) provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the

---

[5] The Court only addresses one of Defendant's many arguments here in determining the Response Letter did not violate the FDCPA because this one argument is dispositive.

consumer with respect to such debt," barring three exceptions outside the scope of this analysis. Importantly, the consumer can waive this protection, *see Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 763 (8th Cir. 2018)[6], just as Plaintiff did here.

By including language that he disputed the debt in his Initial Letter, Plaintiff invited Defendant to confirm the amount owed.[7] Defendant responded narrowly concerning the disputed debt amount, indicated it would no longer contact Plaintiff as he requested, and did not contact him thereafter. *Compare Scheffler*, 902 F.3d at 763 (finding plaintiff waived his § 1692c(c) claim by calling the debt collector to inquire about the debt after sending a letter ceasing communications), *with Denmon*, 661 F. Supp. 3d at 922, n.3 (explaining a debt collector's letter validating the debt and stating it would "resume collection activity on your account" went beyond the scope of any waiver plaintiff gave when she disputed the debt and requested communications cease). *See also Duarte v. Midland Funding, LLC*, No. 17 C 5061, 2019 WL 978495, at *4 (N.D. Ill. Feb. 27, 2019) (finding similar facts to the present case did not violate § 1692c(c)); *Stout v. EquiCredit Corp. of Am.*, No. 16-5673, 2017 WL 9473120, at *2 (6th Cir. Apr. 6, 2017); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1170 (9th Cir. 2006).

While Plaintiff argues the disclaimer on the second page indicates Defendant was actually trying to collect a debt, "these types of boilerplate miniMiranda disclosures do not automatically trigger the protections of the FDCPA[.]" *Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107,

---

[6] Notably, some circuits apply an "unsophisticated consumer standard" to determine whether a plaintiff waived his rights under the FDCPA, but the Eighth Circuit in *Scheffler* indicated it "has not yet applied the unsophisticated consumer standard in the specific context of a 1692c(c) claim." *See* 902 F.3d at 762 n.2. The Eighth Circuit declined to address the issue in that case after finding plaintiff's "acts would constitute a waiver under the unsophisticated consumer standard or one of common sense." *Id.*

[7] Defendant has an even stronger argument here than it did in *Smitherman*. In *Smitherman*, plaintiff's initial letter not only stated she was disputing the debt (as Plaintiff did here) but also that the letter "was not a request for validation." Still, the Court found that by disputing the debt amount, plaintiff invited Defendant to respond. *Smitherman*, 2024 WL 3015790, at *5 (explaining plaintiff "cannot claim this invitation was unwanted simply by including contradictory language that the letter was not a request for validation").

8

Case 4:23-cv-00367-DGK    Document 35    Filed 07/23/24    Page 8 of 9

1114 (8th Cir. 2021) (cleaned up); *see Duarte*, 2019 WL 978495, at *3; *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010); *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 432 (6th Cir. 2015). Aside from the boilerplate disclosure, Plaintiff has not pointed to any other evidence indicating that he believed the letter was an attempt to collect a debt. In fact, Plaintiff testified that he was not sure whether the letter was asking for payment. *See* Pl.'s Dep. at 33:24–25, 34:1, ECF No. 29-1.

Considering the Response Letter in tandem with the Initial Letter, and using common sense, Plaintiff waived his § 1692c(c) claim.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Date: July 23, 2024              /s/ Greg Kays
                                 GREG KAYS, JUDGE
                                 UNITED STATES DISTRICT COURT